### SWANN v. MUTUAL RESERVE FUND LIFE ASS'N.

### KELLER v. SAME.

(Circuit Court, D. Kentucky. April 9, 1900.)

1. FOREIGN CORPORATIONS—JURISDICTION IN SUIT AGAINST—SERVICE OF PROCESS.

Legal service of process upon a corporation, which will give a court jurisdiction over the corporation, can be made only in the state where it resides by the law of its creation, or in a state in which it is actually doing business at the time of the service, and from that circumstance derives a residence.

2. SAME—AUTHORIZING SERVICE ON AGENTS—EFFECT OF REVOCATION OF LICENSE BY STATE.

A resolution adopted by the directors of an insurance company, on its being authorized to do business in another state, consenting, as required by the laws of such state, that service of process in any action against it might legally be made upon any of its agents in the state, or upon the state insurance commissioner, although not limited by its terms to any particular time, ceases to be effective upon the revocation by the state authorities of the company's license to do business in the state, and service of summons thereafter made on the insurance commissioner in a suit brought against the company in a state court confers upon such court no jurisdiction over the defendant.

3. SAME—CONTRACT—RIGHT TO PARTICULAR REMEDY.

The fact that the laws of a state required foreign insurance companies, licensed to do business in the state, to subject themselves to suit therein, does not give a citizen of the state to whom such a company issues a policy, while so doing business, the right, as a matter of contract, to maintain a suit in a court of the state against the company, after its license has been revoked, and it has in consequence ceased to do business in the state.

**4. SAME—DOING BUSINESS IN STATE.**

The fact that a bank receives premiums due to a foreign insurance company for the convenience of its policy holders, and delivers the company's receipts therefor, does not constitute a doing of business by the company in the state, within the meaning of a state statute subjecting foreign insurance companies doing business in the state to suits therein.

## On Motions by Defendant to Quash the Returns of Service.

Randolph H. Blain, for plaintiff Swann.

Zack Phelps and Benj. F. Washer, for plaintiff Keller.

Pirtle & Trabue, for defendant Mutual Reserve Fund Life Ass'n.

EVANS, District Judge.    Each of these cases was instituted in the state court at a date subsequent to October 10, 1899, and each was removed here by defendant.    Upon commencing his action in the state court, each plaintiff caused a summons to be issued against the defendant in due form, upon each of which the sheriff returned, in substance, that it had been executed upon the defendant by delivering a copy thereof to W. H. Stone, the insurance commissioner of Kentucky.    The defendant has in each case moved the court to quash the return on the summons.    Upon the hearing of these motions it was made to appear that the certificate of membership or policy upon which the plaintiff Swann had sued was delivered in Kentucky, where he has at all times resided, and that the certificate of membership or policy upon which the plaintiff Keller had sued was delivered in the state of Arkansas, where he has at all times resided.

On and before May 10, 1893, the following section of the Kentucky Statutes was in force, namely:

"Sec. 631. Before authority is granted to any foreign insurance company to do business in this state, it must file with the commissioner a resolution adopted by its board of directors, consenting that service of process upon any agent of such company in this state, or upon the commissioner of insurance of this state, in any action brought or pending in this state, shall be a valid service upon said company; and if process is served upon the commissioner it shall be his duty to at once send it by mail, addressed to the company at its principal office; and if any company shall, without the consent of the other party to any suit or proceeding brought by or against it in any court of this state, remove said suit or proceeding to any federal court or shall institute any suit or proceeding against any citizen of this state in any federal court, it shall be the duty of the commissioner to forthwith revoke all authority to such company and its agents to do business in this state, and to publish such revocation in some newspaper of general circulation published in the state."

On that day the defendant adopted a resolution in the following language, a copy of which was filed with the insurance commissioner:

"Resolved, that the Mutual Reserve Fund Life Association Insurance Company of the City of New York, in the state of New York, having been admitted or having applied for admission to transact business in the state of Kentucky, in conformity with the laws thereof, does hereby consent that service of process upon any and every agent that is now or may hereafter be acting for said company in Kentucky, or upon the insurance commissioner of said state, shall be valid service upon said company in any action or special proceedings against said company in the state of Kentucky, subject to and in accordance with all the provisions of the statutes and laws of said state of Kentucky now in force, and such other acts as may be hereafter passed amendatory thereof and supplementary thereto; and said agents, or said insurance commissioner, are hereby duly authorized and empowered to acknowl-

edge service of process for and in behalf of said company in the state of Kentucky, in all cases as provided for by the laws of the state of Kentucky; and service of process, mesne or final, upon said agents, or said insurance commissioner, shall be taken and held to be as valid as if served upon said company, according to the laws of this or any other state, hereby waiving all claim or writ of error by reason of such acknowledgment or service; and service of process upon such agents, or such insurance commissioner, in any county of this state, shall be deemed good and valid, and authorize trial of the cause in the court whence such process issued."

On October 10, 1899, the defendant was given a notice in this language, namely:

"Office of Insurance Commissioner of the State of Kentucky.

"Frankfort, Ky., October 10th, 1899.

"Notice is hereby given that from and after this date all authority granted by this department to the Mutual Reserve Fund Life Association of New York City, a corporation organized under and existing by the authority of the laws of the state of New York, together with all licenses issued by this department to agents of the above-named association, are revoked.

"W. H. Stone, Insurance Commissioner."

From and after the date last named the defendant had no agents in Kentucky, although a bank in the city of Louisville did afterwards receive from holders of certificates of membership for the credit of the defendant, and for the convenience of the certificate holders, the assessments made thereon, and delivered the company's receipts for the amounts thus received, and this practice continued up to the time of the filing of these actions; but the defendant did not, after October 10, 1899, otherwise transact any business in Kentucky, took no applications for membership therein, and maintained no agents or agencies in the state.

Had the defendant actually rescinded the resolution before the service there could have been no difficulty, but, as it did not, the interesting question has arisen whether the defendant shall, upon the facts stated, be held to have been duly and effectively served with process and notice to appear and answer in these actions, or either of them, by reason of the service upon the insurance commissioner. In order to make service of process good, as a general rule it must, in the case of a corporation, be made upon some one of its officers or agents, or upon some person upon whom it shall have consented that process might be served on its behalf; in short, upon one who is, at least, at the time an agent of the defendant in some proper sense of that term as applied to the service of process. It is equally certain that the defendant, by the resolution copied above, plainly consented that under certain circumstances service of process in suits against the defendant might be made upon that public official known as the "Insurance Commissioner," and be binding on the defendant. That the consent evidenced by the resolution was effective for that purpose, and that such service would support a judgment in personam against the corporation in all cases where the cause of action arose in Kentucky, and where, in addition, the action itself was instituted, and the service of process had, while the corporation was transacting business in Kentucky, within the meaning of the resolution, and in the statutory sense, seems to be conceded, and, indeed, to be incontrovertible. But

it is insisted upon the one hand, and denied upon the other, that this is not true where the suit is brought after the corporation has ceased to carry on business in Kentucky by reason of an arbitrary revocation of the state's authority for it to do so; and this proposition is even more emphatically insisted upon in the case of the plaintiff Keller, whose action was not only instituted after the revocation of defendant's authority, but where the cause of action itself arose in the state of Arkansas, where the plaintiff lived and where the policy was delivered. The latter case seems to be altogether free from doubt, because there does not appear to be any plausible ground for contending that the purposes of the Kentucky Statutes were intended to embrace such a case.

The case of plaintiff Swann is somewhat more difficult, only because the contract with him was made in Kentucky, and while the defendant was lawfully transacting business here. In order to give jurisdiction of the person of a defendant, whether a natural person or a corporation, there must be a service upon him of process,—that is, a notice to appear and answer,—and the thing done which is claimed to be a service must come up to this general requirement. In the case of an individual, this service can only be made upon him in person. Nothing else can be sufficient or valid. In the case of a corporation, it is equally essential that service shall be upon the defendant, which necessarily involves service upon some person who, pro hac vice, stands in the place of the corporation, and as its representative, for this purpose, by its authority and consent, or by operation of the law of a state, while the corporation is actually doing business therein. Unless service is made in such a way as to bring it within that rule, it is not sufficient to give jurisdiction over the person of the corporation, and, unless the corporation is doing business therein, the state itself has no power over it, and can give none to its courts. When it ceases to do business in a state, the laws of the latter cease to have any force over it or its affairs. It is a general and well-established rule that an attempt to secure service upon a corporation in a state where it does not reside or do business, by service, even upon its president, while casually in that state, will not be valid. Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517. This rule is based, not only upon the essential principles of the law of corporations, but upon the fundamental doctrine that such service would not be due process of law. An officer of a corporation however high in grade, when casually away from the home of the corporation, does not carry with him out of the home jurisdiction of his company his official character, authority, or responsibilities, because it is not so intended by his principal. In short, under these circumstances, he does not represent his company, although he is its president, its highest officer, and its most powerful agent.

Another fundamental proposition is that a defendant is ordinarily entitled to be sued at his home, and consequently that jurisdiction of his person cannot be secured by any foreign tribunal, unless he is in person served with process within its jurisdictional limits. These propositions demand that any statute which may tend to trench upon them, even in cases of corporations, shall be strictly construed. When

a corporation, organized in another state, and a citizen thereof, applies to the state of Kentucky for its permission and authority to do business here, it must comply, ordinarily, with all such conditions as this state may require. Those terms are arbitrary, and in a certain sense compliance with them is extorted. In the cases before us, it may fairly be assumed that the resolution was adopted only because it was an essential condition precedent to permission to do business in Kentucky. Its general language is very broad, and in terms fixes no limit to the duration of its operation; but does that mean that it is certainly to be perpetual, or must it be considered in connection with all the attendant facts and conditions, and held only to be co-extensive in its term of existence, with the consideration, so to speak, upon which it was adopted, namely, the authority to it to transact business in the state? To give effect to the recognized principles to which we have alluded seems to require that we should hold that the consideration was mutual and reciprocal in its character and operation between the state and the corporation, and should be construed to include the essential implied condition that, so long as the authority was in force, so was the agreement, made with the state alone, that service of process on the insurance commissioner should be operative, but no longer. The one was the consideration which would support the existence of the other.

It will be observed that the insurance commissioner and the agents of defendant are so intimately connected in the language of the resolution that it is difficult to see any difference in the meaning of the language thereof as implied to one or the other. The revocation of the licenses necessarily involved the withdrawal and revocation of all the defendant's agencies, and this fairly included the insurance commissioner, as well as the others; he being, at last, nothing more or less than an agent for one limited purpose. The having of agents in Kentucky after the revocation of all the licenses was impossible, and any act of theirs would be unlawful, if it was the transacting of business. It cannot be fairly said that an insurance corporation, which has no authority to do business, can be considered as voluntarily keeping as its agent one who, however hostile to the company's interests, and however little disposed in any manner to take care of those interests, shall nevertheless, in spite of the company's exclusion from the state, still be held to be an agent whom the corporation chooses to have as such, and who is bound to guard its interests and protect its rights, and to stand in its place and stead, in such manner as to make service on him good to give jurisdiction of the person of the corporation, whether or not the insurance commissioner would be sufficiently just to the defendant to inform it of the attempted service, and give it the notice which service of process is intended to give to a person sued, so that he may certainly have a day in court and know of the allegation against him. On the contrary, it would seem to be the plainest dictate of reason and justice that when all the agents whom the corporation voluntarily trusts and confides in are excluded from the state, and with them the corporation itself, it cannot be due process of law to serve the summons on the insurance commissioner, nor can it be assumed to have been the intention of the parties in

passing the resolution that that official person should remain the constructive, but involuntary, agent of a company which had, by his own hostile and arbitrary act, been forced out of the state by him, and who had himself revoked the license of every agent of the company.

It seems to result from these considerations that when the authority of the company and the licenses of all its agents were revoked, with the legal consequence of making it unlawful for defendant to have agents to do business in Kentucky, the operation of the resolution was exhausted. Thereafter the corporation had no personal presence or existence in Kentucky, and the insurance commissioner could not accomplish all of these results, and still himself remain the representative of the excluded company, so as to receive service for it of that process which carries with it the necessary notice to appear and answer to give jurisdiction of the person of the defendant. His agency was revoked, with the others.

The resolution and the licenses ceased to operate at the same time, the one cessation being the consequence of the other. When the consideration, namely, the authority to do business in Kentucky, failed, the extorted agreement with the state embraced in the resolution, viz. the enforced appointment of the commissioner as agent, ceased to have vigor, and lapsed, particularly when the license was revoked by that state officer, who, notwithstanding, is now still claimed to be the company's agent. The status of the parties must now be precisely the same as if the corporation had never done business in the state, and all of the principles laid down so clearly in the case of St. Clair v. Cox, 106 U. S. 356-360, 1 Sup. Ct. 354, 27 L. Ed. 222, apply with full force. The revocation of the authority and licenses drove the corporation out of the state, and thenceforward it was not present in Kentucky in any sense. Neither the state, its laws, nor its courts, thereafter had any power or authority over it, and it necessarily follows that those express revocations ipso facto revoked the consent that service upon the company's agent or the insurance commissioner should be good. It would be inexcusable to hold that service upon a state officer, under all these circumstances, was such notice to the excluded corporation to appear and answer as would be due process of law, or in any just sense a notice to which the absent defendant, who might never hear of it, should respond. The insurance commissioner was not bound to the absent company by any tie or obligation, but, on the contrary, had assumed an attitude at least of official hostility to the corporation, and no one could beneficially to it call his conduct in question if he failed, after he received it, to send the notice by mail to the corporation.

In section 481, Story, Ag., is found this general statement:

"The power of constituting an agent is founded upon the right of the principal to do the business himself; and, when that right ceases, the right of creating an appointment, or of continuing the appointment of an agent already made, for the purpose, must cease also. In short, the derivative authority cannot generally mount higher or exist longer than the original authority."

The learned author, as may be seen from his illustrations, did not have in mind cases like the one before us, but we incline to think that, in a limited sense, this general rule does embrace it, inasmuch as

the power of the corporation to have agents in Kentucky ceased altogether when its license and theirs were revoked. If it could not remain here itself, it could not have agents here of any degree. The express language of the notice of October 10, 1899, warrants this conclusion.

Ordinarily, an agent's authority is renounced by his taking a position of hostility to his principal, and this would also seem to be an additional reason for holding that any trust relation of that character between the absent corporation and the insurance commissioner ceased when the latter excluded the company from Kentucky. We do not mean to say that a corporation may not, as between it and a litigant, consent to service upon an agent in a state where it is not transacting business. If it so intends, its consent may be binding. What we hold is that the consent evidenced by the resolution in this case did not reach, and was not intended to reach, beyond the time when the state permitted the corporation to remain in Kentucky and do business there. This is all that can fairly be said to have been in the contemplation of the parties.

But inasmuch as the defendant in these cases has not voluntarily appeared in them, nor consented to the service, otherwise than as it might result from the resolution, the legal propositions involved may be thus stated: There can be service of process upon a corporation in such form as to give jurisdiction over its person in those states only which come within one or the other of the following classes, namely— First, that wherein the corporation resides by the law of its creation; or, second, that in which it is actually doing business at the time of the service, and derives a residence from that circumstance. Here the corporation, by the law of its creation, resides in the state of New York, and was not doing business, and could not do business, in Kentucky at the time of the service. On the contrary, it was in fact and in law at that time absent from the state, having been forced to leave by the state itself. The state cannot exclude it upon the one hand, and retain it upon the other. Therefore, if these premises are true, it must result that the service in these cases was not good.

The case last referred to, of St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222, is very instructive, and seems in all important respects to control the questions before us in these cases. It discusses and establishes all the essential principles upon which our decision must depend. It is well supplemented by the case of Goldey v. Morning News, 156 U. S. 521, 15 Sup. Ct. 559, 39 L. Ed. 517.

Section 631 of the Kentucky Statutes did not embrace the provisions of section 3 of the act of April 19, 1884, to the effect that the right to serve process on the person who was last an agent for the insurance company should continue as to all contracts made in this state, notwithstanding the revocation of the authority and the licenses, and the failure, in 1894, to include this provision in section 631 of the Kentucky Statutes has sufficient significance to add force to the view we have taken.

It is contended on behalf of the plaintiffs that the remedy provided for at the time of the agreement was a part of the contract, and that it would impair the obligation of that contract to deny the right of

service claimed here; but the case of Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606, which is cited, not only does not establish that proposition, but is against it; and so, also, are the cases of Bank v. Francklyn, 120 U. S. 755, 7 Sup. Ct. 757, 30 L. Ed. 825, and Morley v. Railway Co., 146 U. S. 171, 13 Sup. Ct. 54, 36 L. Ed. 925. A change of parts of the remedy is not unconstitutional.

We have attached but little weight to the contention that the defendant has an agent in Kentucky now, because we suppose it is only a case where a bank is authorized to receive a mere deposit for the defendant, to credit it with the amounts paid by members here, and to hand them the defendant's receipts therefor, in order to oblige members who would otherwise have to remit to New York. The authority being revoked, the defendant cannot legally do business in Kentucky, and does not. Becoming a mere depositor in a bank is not doing business in Kentucky, within the meaning of our insurance laws. But, even if otherwise, and especially after the revocation of October 10th, the query might arise whether the service must not have been upon the bank, as the only actual agent then in the state, even if unlawfully such.

We have been unable to find any case which discusses the precise questions presented here, except that of Friedman v. Insurance Co. (C. C.) 101 Fed. 535, which did involve it, and in which my learned predecessor, Judge Barr, shortly before his retirement, in an opinion then delivered, reached a conclusion similar to the one we have indicated. His views seem to be sound and his reasoning just. We adopt both.

The motions to quash should be sustained. The actions will be dismissed, without prejudice.