**DAMPSKIBS ACTIESELSKABET SANGSTAD et al. v. HINES, Director General of Railroads.**

(District Court, D. Massachusetts. March 17, 1920.)

No. 1652.

1. Shipping ⬤⟳179—Time required for overdue docking held not deductible from demurrage for repairs made necessary by accident.

Though the time within which a vessel was to be dry-docked under the charter had expired before the accident, and the repairs to the mast made necessary by the accident could have been made while the vessel was in dry dock, the reasonable time for dry-docking is not to be deducted from the time required for the repairs to the mast, which were necessary before the vessel started a voyage which the charterer intended to make and did make before vessel was placed in dry dock.

2. Shipping ⬤⟳179—Necessary demurrage for time required for repairs due to accident not reduced by making other repairs at same time.

Demurrage for the time required for necessary repairs to a vessel's mast will not be reduced because, during the same time, other repairs, not made necessary by the accident, and which could have been made while the vessel was taking on or discharging cargo, were made.

In Admiralty. Libel by the Dampskibs Actieselskabet Sangstad (Sangstad Steamship Company) and others against Walker D. Hines, Director General of Railroads. Decree directed for libelants.

Storey, Thorndike, Palmer & Dodge, of Boston, Mass., for libelants.
Henry F. Hurlburt and Hurlburt, Jones & Hall, all of Boston, Mass., for respondent.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MORTON, District Judge. In view of the stipulation of the parties as to evidence, the motion to recommit the assessor's report is denied.

The other questions arise on the libelant's exceptions to the assessor's report. The principal question, and the only one which has been argued, relates to the amount of damages allowed as demurrage; the other items are not objected to.

The libelant claims 8½ days demurrage at the rate found by the assessor, viz. $1,875 per day. This is the time which the steamer was actually out of service at Boston for repairs to the mast, and which was necessarily required for such repairs. The assessor allowed only 3 days of it for the following reasons: By the charter party the steamer was to be dry-docked every 6 months. She was last dry-docked before the accident on July 28th. As the accident happened on February 14th, dry-docking was then overdue. It usually consumed 2½ days of the steamer's time. The assessor seems to have ruled, in effect, that the owners should have dry-docked the steamer and in connection therewith have made the repairs on the mast, which would have saved 2½ days' lost time; his view being, as I understand it, that the dry-docking had to be done anyway, and the vessel had to be laid off for that purpose in the immediate future, and that therefore the injury to the mast did not pro tanto necessitate lost time.

Deducting this 2½ days from the 8½ left 6 days, of which the assessor allowed only one-half for the following reason: While repairs to the mast were going on, the charterers made certain repairs of cargo damage; i. e., injuries to stanchions, rails, hatch combings, etc., caused by loading and discharging cargo. These repairs were not pressing, and could have been made without laying up the ship; but, as she had to be laid up to repair the mast, the charterers took advantage of the opportunity to make them at the same time. They cost more than the repairs to the mast. The respondent contends that such repairs had to be completed before the expiration of the charter party in August following, and that therefore they should be regarded as presently necessary work. The assessor found, however, that—

"There was evidence to show, and I find and report that the cargo damages could be, and often are, repaired while a vessel is loading or discharging cargo, and that it was not necessary to lay her up to make those that were made in this case." Report, p. 7.

He nevertheless apportioned the 6-day period between the two sets of repairs and held the respondent liable only for one-half of it.

[1] That good judgment required the immediate repair of the mast, I have no doubt. It is the arm of the ship by which she lifts cargo and handles heavy weights. In large ports where the docks have discharging apparatus, the ship's derricks are often not required, but in many places there is no other way to load or unload. They ought to be kept ready for service. The Sangstad's subsequent course shows this. Proceeding from Boston to Norfolk or Baltimore, she there loaded cargo for Cuba, where she discharged it, it is said, by her own tackles—something which she could not have done if the repairs

on the mast had not been completed. It was after that voyage that she went into dry dock. The assessor finds that—

"The injury to the mast did not render the steamer unseaworthy or unfit to go to sea, but the mast was an important part of the ship's equipment that the charterer was entitled to the use of, and as I find, and report, made it reasonable, if not necessary, to have it repaired immediately" (sic). Report, p. 6.

Undoubtedly a vessel ought not to be allowed to make a direct profit out of an award for an accident, but I do not think that the owners or charterers of the Sangstad were bound to modify their future plans concerning her in order to give the respondent the benefit of this rule. If they needed the mast at once for the contemplated voyage, which was the fact, and did not intend to dry-dock the vessel until after that voyage was completed, they had a right to make the repairs at once, and the respondent must pay for the time lost. The 2½ days was, in my opinion, improperly deducted from the demurrage time.

[2] As to the apportionment of the 6 days between the cargo repairs and the mast repairs: As above observed, there is no question but that the entire time (8½ days) was required for the repairs to the mast. The assessor has expressly found that the cargo repairs could have been made without withdrawing the vessel from service.

"They did not require the laying up of the steamer at the time, but properly could have been deferred to a later time, either when the ship was in dry dock or when she was loading or discharging and engaged in profitable use." Report, p. 7.

Clearly they were not pressing, nor immediately required. This being so, I do not think that the case comes within any of the authorities which have been relied upon by the respondent.

In my opinion the entire time occupied by the repairs on the mast ought to have been compensated for. In so far as the assessor has found and ruled to the contrary, the libelant's exceptions to his report must be sustained. The libelant may present a decree.