GABRIEL GARBER v. BANCAMERICA-BLAIR CORPORATION
AND ANOTHER.
RAND COMPANY v. SAME.[1]

May 12, 1939.

Nos. 31,906, 31,913.

[1]Reported in 285 N. W. 723.

*Junell, Fletcher, Dorsey, Barker & Colman* and *David E. Bronson,* for appellant.

*Benjamin Segal,* for respondent Gabriel Garber.

*Snyder, Gale & Richards* and *Edmund T. Montgomery,* for respondent Rand Company.

PETERSON, JUSTICE.

The Bancamerica-Blair Corporation, a New York corporation, and the Bancamerica-Blair Corporation, a Delaware corporation, are defendants in both cases. The New York corporation appeared specially in each case and moved to set aside the service of the summons upon it upon the grounds that the court was without jurisdiction, and appeals from the orders denying the motions.

The actions were for rescission of sales of securities within the state by defendants to plaintiffs in violation of the blue sky law of Minnesota (1 Mason Minn. St. 1927, §§ 3996-1 to 3996-28) and to

recover judgment for the purchase price. The purchases of the Rand Company amounted to $114,600, of which $23,000 was purchased on May 3, 1929, and $91,600 on October 8, 1929. Plaintiff Garber purchased $2,300 of securities on September 23, 1929.

Jurisdiction of appellant is predicated on its having done business in the state. Apparently jurisdiction of the Delaware corporation was conceded, since the service made upon its agent authorized to accept service of process upon it within the state was not questioned. The motion was heard upon the complaint and voluminous affidavits, containing much hearsay to which neither party objected. There was a showing that appellant was doing business in the state through the Delaware corporation from May, 1929, to October, 1931. Although the showing was strongly disputed, we assume without holding that it sustains a finding that appellant during the mentioned period was doing business in the state of Minnesota.

The complaints allege that "on or about October 15, 1931, defendants closed their offices and places of business and discontinued their transaction of business in, and withdrew and departed from, the state of Minnesota, and at all times thereafter up to June 22, 1937, resided outside of the State of Minnesota." The Delaware corporation alone returned to the state in 1937, leased an office from the plaintiff Rand Company, affixing its corporate seal to the lease, and had its employes in charge of such office. There is no showing that after it returned to the state in 1937 it transacted any business here for the appellant or that it acted as appellant's agent. In fact the evidence does not show what business, if any, it transacted. In May, 1937, when it is admitted both corporations were absent from the state, the Delaware corporation took a release in settlement of a lawsuit,which released it and appellant from liability to the plaintiff named therein.

The summons and complaint were served upon the Delaware corporation and its agents as the agents of appellant in the Garber case on February 28, 1938, and in the Rand Company case on March 19, 1938.

Service was attempted under 2 Mason Minn. St. 1927, § 9231(3), which provides that service of the summons upon a foreign corpora-

tion may be made upon any of its officers or agents "within the state." While there was no evidence that appellant was doing business in the state through the Delaware corporation as its agent after the latter's return to the state in June, 1937, plaintiff claims that it has shown an agency by evidence which was not disputed. Appellant owns all the capital stock of the Delaware corporation. The two corporations have identical names without anything to distinguish one from the other and substantially the same officers and directors. They have their main offices in the same rooms in a building in New York. But each held separate stockholders' and directors' meetings, kept separate books, records, and accounts, transacted its business with its own capital and through its own employes, and maintained its own branch offices.

Appellant contends that the court was without jurisdiction upon the grounds that it was not doing business in the state at the time of the attempted service of the summons upon it. Plaintiffs contend that the evidence permits a finding that appellant was doing business in the state at that time since an agency once shown to have existed is presumed to have continued in view of the parent-subsidiary relationship of the two corporations, which dates back to May, 1929. The agency referred to is the one which we have assumed for purposes of decision to have existed during the period from 1929 to 1931.

■ The question is whether a foreign corporation which did business in the state without having designated an agent for service or consented to jurisdiction is subject to jurisdiction after it has ceased doing business in and has withdrawn from the state. A state, absent consent, may exercise jurisdiction over a foreign corporation only if it is doing business in the state at the time of the service of process. Dahl v. Collette, 202 Minn. 544, 279 N. W. 561; Restatement, Conflict of Laws, § 92. Jurisdiction is predicated on doing business in the state at the time of service of process to conform with inherent and constitutional limitations. "The foundation of jurisdiction is physical power," as Mr. Justice Holmes pointed out in McDonald v. Mabee, 243 U. S. 90, 91, 37 S. Ct. 343, 61 L. ed. 608, L. R. A. 1917F, 458. State courts exercise state

power, which is limited by the territorial boundaries of the state to persons and things within its borders. Process of state courts is effective only within the state. Attempted service outside the state is of no effect and void. From this inherent limitation of state power springs the necessity for service of process upon the defendant within the state. Under the due process clause of the fourteenth amendment of the constitution of the United States a judgment rendered by a state court without jurisdiction acquired by service of process upon the defendant within the state is lacking in due process of law and is absolutely void, even in the state of its rendition. Pennoyer v. Neff, 95 U. S. 714, 24 L. ed. 565; Riverside & Dan River Cotton Mills v. Menefee, 237 U. S. 189, 35 S. Ct. 579, 59 L. ed. 910; Sellars v. Sellars, 196 Minn. 143, 264 N. W. 425.

Numerous theories have been advanced to justify doing business in the state as the basis of jurisdiction. One' line of cases holds that there is implied consent to jurisdiction where a foreign corporation voluntarily does business in a state other than that of its creation: Lafayette Ins. Co. v. French, 18 How. 404, 15 L. ed. 451; St. Clair v. Cox, 106 U. S. 350, 1 S. Ct. 354, 27 L. ed. 222; another group of cases holds that in such a case there is corporate presence of the foreign corporation in the state: Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. ed. 710; and another holds that the foreign corporation has thereby submitted itself to the state's jurisdiction: People's Tobacco Co. Ltd. v. American Tobacco Co. 246 U. S. 79, 38 S. Ct. 233, 62 L. ed. 587, Ann. Cas. 1918C, 537; Restatement, Conflict of Laws, § 92, Comment a. See 25 Col. L. Rev. 1032; 17 Minn. L. Rev. 270; 19 Minn. L. Rev. 375; 1 Beale, Conflict of Laws, §§ 87.1 to 93.1. Perhaps there are still other theories. The so-called consent and submission to jurisdiction, at least so far as they are subjective, and corporate presence, are of course mere fictions and generally are directly opposite to the real facts of the case. Pennsylvania F. Ins. Co. v. Gold Issue M. & M. Co. 243 U. S. 93, 37 S. Ct. 344, 61 L. ed. 610; Flexner v. Farson, 248 U. S. 289, 39 S. Ct. 97, 63 L. ed. 250; 14 Cal. L. Rev. 12. Perhaps it would be more accurate to say that the foreign corporation has become amenable to the jurisdiction of the state.

The problem is to reconcile jurisdiction of the corporation, which is outside the state, with inherent and constitutional limitations of state power. The justification for holding that doing business in the state is a basis for jurisdiction lies in the assumption that state power extends to the foreign corporation by reason of its activity in the state. This view has been adopted as to nonresident individuals who do acts subject to special regulation by the state. Henry L. Doherty & Co. v. Goodman, 294 U. S. 623, 55 S. Ct. 553, 79 L. ed. 1097. By whatever theory doing business in the state is justified as the basis of jurisdiction, in the particular case jurisdiction is determined by the nature and extent of the corporate activity within the state. Restatement, Conflict of Laws, § 167; 50 Harv. L. Rev. 892 and 1133.

Speaking in terms of corporate presence, in Bank of America v. Whitney Cent. Nat. Bank, 261 U. S. 171, 43 S. Ct. 311, 67 L. ed. 594, the court said that jurisdiction flows from the fact that the corporation *itself* does business in the state in such manner and to such an extent that its *actual presence* is established. In Tauza v. Susquehanna Coal Co. 220 N. Y. 259, 115 N. E. 915, the court in applying the corporate presence theory said that the question was whether the corporate activity in the state was such that it could be said to be "here"—that is, present in the state. See, Louis F. Dow Co. v. First Nat. Bank, 153 Minn. 19, 189 N. W. 653; American Loan & Inv. Co. v. Boraas, 156 Minn. 431, 195 N. W. 271. In Gaboury v. Central Vermont Ry. Co. 250 N. Y. 233, 237, 165 N. E. 275, 277, the court said: "Presence within the State imports the use of corporate power by corporate representatives."

Jurisdiction begins, continues, and ceases with doing business in the state, the fact on which it is based. De Castro v. Compagnie Francaise Du Telegraphe (C. C.) 76 F. 425. A foreign corporation, after it has once entered a state, is not bound to remain there, but may withdraw at will. Reliance Motor Co. v. Craig, 206 Iowa, 804, 221 N. W. 499. Jurisdiction ceases when a foreign corporation ceases to do business and withdraws from the state. American Loan & Inv. Co. v. Boraas, *supra;* Conley v. Mathieson Alkali

Works, 190 U. S. 406, 23 S. Ct. 728, 47 L. ed. 1113; Roark v. American Distilling Co. (8 Cir.) 97 F. (2d) 297; St. John v. Oklahoma Natural Gas Corp. (5 Cir.) 69 F. (2d) 96; R. L. Witters Associates, Inc. v. Ebsary Gypsum Co. (D. C.) 19 F. Supp. 646; Jefferson Island Salt Co. v. E. J. Longyear Co. 210 Ala. 352, 98 So. 119; Gaboury v. Central Vermont Ry. Co. *supra;* Swann v. Mutual Res. Fund L. Ass'n. (6 Cir.) 100 F. 922; Eureka Merc. Co. v. California Ins. Co. 130 Cal. 153, 62 P. 393.

Jurisdiction existed during the period from 1929 to 1931 upon the hypothesis that appellant was then doing business here. Such jurisdiction ceased when it withdrew from the state in 1931. There was no jurisdiction thereafter, unless appellant again did business in the state. While it is true that the Delaware corporation reëntered the state in 1937, there is no evidence that it transacted any business here as the appellant's agent.

Jurisdiction must exist as of the time the summons is served. That there may have been jurisdiction at some prior time, as there was here, will not suffice. Louis F. Dow Co. v. First Nat. Bank, *supra;* Paterson v. Shattuck Arizona Copper Co. 169 Minn. 49, 210 N. W. 620; 14 C. J. p. 1376, § 4083.

■ The fact that appellant's wholly owned subsidiary, the Delaware corporation, was doing business in the state at the time of service of the summons did not establish that appellant was doing business in the state. The use of a subsidiary does not subject the parent to jurisdiction of the state, where, as here, the separate existence of each is recognized and maintained. Consolidated Textile Corp. v. Gregory, 289 U. S. 85, 53 S. Ct. 529, 77 L. ed. 1047; Cannon Mfg. Co. v. Cudahy Packing Co. 267 U. S. 333, 45 S. Ct. 250, 69 L. ed. 634; Peoples Tobacco Co. Ltd. v. American Tobacco Co. *supra;* Philadelphia & Reading Ry. Co. v. McKibbin, *supra;* St. Louis S. W. Ry. Co. of Texas v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. ed. 486, Ann. Cas. 1915B, 77; 14 Cal. L. Rev. 12.

Respondents cite Cutler v. Cutler-Hammer Mfg. Co. (D. C.) 266 F. 388; Mas v. Orange-Crush Co. (4 Cir.) 99 F. (2d) 675, and other similar cases. In the Cutler case a subsidiary corporation had an agent in charge of its business, which consisted of selling only the

parent corporation's products. The parent ran the business as though it were a branch or department. It paid the salaries of the agent and other employes, the office expenses, and controlled the operation of the business. All sales were reported and all collections remitted to the parent, and bills for goods were sent by the parent to the customers. There was no evidence of separate corporate activity by the subsidiary. The relation between the parent and the subsidiary, the court said [266 F. 390], "amounted to little more than a bookkeeping arrangement."

In the Mas case the local subsidiary was shown to have existed only on the books of the foreign parent, which conducted the business as its own under the name of the subsidiary. The subsidiary had no business headquarters, capital, or employes of its own. It engaged in no corporate activity of its own and had no independent corporate existence. The court was careful to distinguish the case from the Cannon case, saying that the subsidiary [99 F. (2d) 677] "was a mere name without reality, a device to give the appearance of the transaction of an independent business."

If it had been shown that the subsidiary transacted the parent's business here as its agent—that is, that the relation of principal and agent actually existed as in the case where an individual is employed as agent, or if, there having been no corporate separation in fact, the parent employed the subsidiary to transact the parent's business, the parent would have been doing business in the state. Where, however, the corporate separation is maintained and the subsidiary conducts its own business, the subsidiary, not the parent, is doing the business. In that situation the foreign parent cannot be said to be doing business in the state. See 39 Yale L. J. 193, and 14 Cal. L. Rev. 12.

The Cannon case and the instant one are substantially the same with respect to the controlling facts. In each, plaintiff served process on the foreign corporation subsidiary of a foreign corporation parent, each of which was organized under the laws of different states with identical names, stock ownership of the subsidiary by the parent, common offices, and substantially the same officers and directors. But in each the subsidiary had its own corporate

activity, transacted its own business, had its own capital, officers, and employes, kept its own books, records, and accounts, and held its own stockholders' and directors' meetings. In the Cannon case the service was held bad upon the grounds that the parent was not doing business in the state through the subsidiary. The court said [267 U. S. 337]: "The corporate separation, though perhaps merely formal, was real. It was not pure fiction." So it is here. In the Cutler and the Mas cases there was no such separation of parent and subsidiary, but on the contrary the corporate identity of the subsidiary was so completely obliterated that the subsidiary was deemed in the Cutler case to be a mere bookkeeping arrangement and in the Mas case a mere name without reality.

Erickson v. Minnesota & Ontario Power Co. 134 Minn. 209, 158 N. W. 979, did not involve any question of jurisdiction of a parent corporation by reason of the presence of its subsidiary in the state. Perhaps the facts in this and other cases where a parent was held liable under rules of substantive law for the acts of its subsidiary also show jurisdiction of the parent. In the Cannon case, however, it was pointed out that cases involving only the question of liability of a parent for the acts of its subsidiary are not applicable where the question is that of jurisdiction of the parent based on acts of the subsidiary. This question is treated at length in 39 Yale L. J. 193, where the Erickson case is discussed and criticized at p. 203-204. See p. 204-205.

■ The presumption of the continuance of an agency once shown to have existed does not help plaintiffs. The purpose of the rule is to attribute to a party responsibility for the acts of his alleged agent where another has justifiably acted in reliance on such an agency. There is no basis for invoking the rule here. Furthermore, it is doubtful whether the agency of an officer or agent of a foreign corporation will be presumed to continue after the lapse of six years during which it was absent from the state. Under somewhat different circumstances it was held that the presumption did not obtain after two years in Louis F. Dow Co. v. First Nat. Bank, *supra*, and after three years in Hunter v. Mutual Res. L. Ins. Co.

218 U. S. 573, 31 S. Ct. 127, 54 L. ed. 1155, 30 L.R.A.(N.S.) 686. The presumption, if at all applicable, would only establish *prima facie* power to act, but not that any particular acts were done pursuant to such power. Jurisdiction depends upon both power to act and action—that is, presence of an agent in the state and doing business by such agent. Presence of an agent in the state alone will not suffice. In addition, the principal must do business in the state through the agent. Gloeser v. Dollar Steamship Lines, Inc. 192 Minn. 376, 256 N. W. 666, 95 A. L. R. 1470; North Wisconsin Cattle Co. v. Oregon Short Line R. Co. 105 Minn. 198, 117 N. W. 391; Louis F. Dow Co. v. First Nat. Bank, *supra;* Paterson v. Shattuck Arizona Copper Co. 169 Minn. 49, 210 N. W. 620; Philadelphia & Reading Ry. Co. v. McKibbin, *supra;* Jefferson Island Salt Co. v. E. J. Longyear Co. *supra;* W. B. Kellogg & Co. Inc. v. Barrett, 136 Misc. 275, 240 N. Y. S. 824; 12 R. C. L. p. 111, § 88.

In Robert Mitchell Furniture Co. v. Selden Breck Const. Co. 257 U. S. 213, 42 S. Ct. 84, 66 L. ed. 201, it was held that doing business as well as presence of an agent in the state was necessary to give jurisdiction of a foreign corporation, and that jurisdiction ceased when a foreign corporation ceased doing business and withdrew from the state, although it continued to have an agent in the state with an unrevoked appointment authorizing service of process against it upon him, when it was doing business in the state. That would be the presumed authority of the alleged agent here. Service of process against the corporation upon the agent was held bad upon the grounds that the corporation was not at the time of service doing business in the state. In the instant case there was no showing that appellant was doing business in the state after it once withdrew therefrom. Jurisdiction was lacking for the reasons given in the Mitchell case.

■ The appellant prepared and circulated as late as 1937 consolidated balance and earnings statements which showed the stock ownership and the earnings of the two corporations. The separate corporate identity of each was shown with a list of branch offices of each corporation. We do not attach much significance to such statements since they do not show agency or that appellant was

doing business in the state. The purpose of such statements was to disclose a true and accurate picture of the parent's financial situation. Berkey v. Third Ave. Ry. Co. 244 N. Y. 84, 155 N. E. 58, 50 A. L. R. 599.

■ If we assume that appellant had a listing in the telephone directory in 1937, as claimed, that would not be important. A listing or advertisement does not constitute doing business. Zimmers v. Dodge Brothers, Inc. (D. C.) 21 F. (2d) 152, at 156 and 157; 18 Fletcher, Cyc. Corp. (Perm. ed.) § 8717, note 54. Of course if there had been some showing that appellant was then doing business in the state through the agency of the Delaware corporation, such evidence would be material and perhaps quite persuasive. See Browning-Drake Corp. v. AmerTran Sales Co. 274 Mass. 545, 175 N. E. 45. However, there is no such evidence, and the listing is without significance.

■ No claim is made by plaintiffs that appellant is estopped to deny a statutory appointment of the commissioner of securities or the secretary of state as agent for service of process upon the grounds that it did business here from 1929 to 1931, see Kulberg v. Fraternal Union, 131 Minn. 131, 154 N. W. 748; Massey S. S. Co. v. Norske Lloyd Ins. Co. Ltd. 153 Minn. 136, 189 N. W. 714; 12 R. C. L. p. 110, § 87, note 13; 21 R. C. L. p. 1350, § 99, or that such doing business here should be deemed such an appointment. Service not having been attempted on such officials, the question of their agency to accept service of process is not in the case. Anderson v. Chase Sec. Corp. 193 Minn. 443, 258 N. W. 743.

Since there was no jurisdiction of appellant, the service of the summons should have been set aside.

Reversed.

MR. JUSTICE HILTON, incapacitated by illness, took no part.