## MILLAN v. MUTUAL RESERVE FUND LIFE ASS'N.

(Circuit Court, W. D. Virginia. July 20, 1900.)

1. PROCESS—SERVICE ON FOREIGN INSURANCE COMPANY—VALIDITY.

Under Code Va. §§ 1265–1267, providing that no insurance company which is not incorporated under the laws of the state shall make any contracts of insurance within this state until such company shall appoint a citizen of the state its agent upon whom may be served all lawful process against the company, and that until such appointment is made service

of process may be served upon the auditor of public accounts, service of process upon the auditor, in an action against a foreign insurance company conducted upon the assessment plan, and which has no agent or attorney in this state upon whom service of process may be made, is void, since such corporations are controlled by Act May 18, 1887, and amendments thereto, which makes no provision for the service of process upon a foreign assessment company during the existence of a vacancy in the office of such agent or attorney.

2. SAME—INSUFFICIENCY OF COPY SENT TO DEFENDANT.

A copy of process mailed to a foreign insurance company, pursuant to Code Va. § 1267, in which the day, month, and year of its issuance are left blank, is not sufficient to constitute a legal service under the statute.

3. SAME—JURISDICTION.

Upon a foreign insurance company ceasing to do business in the state of Virginia, it is no longer amenable to the jurisdiction of the courts of that state, under Code Va. § 1267, providing that service of process in actions against a foreign insurance company may be made upon the agent of the company, or, in the absence of the appointment of an agent for such purpose, then upon the auditor of public accounts.

On the Motion to Quash the Service of the Writ.

Downing & Richards, for plaintiff.
Charles S. Stringfellow, for defendant.

PAUL, District Judge.   In this case the plaintiff, on the 16th day of April, 1900, brought an action of assumpsit in the circuit court of Rappahannock county, Va., to recover the sum of $3,000 on a life insurance policy issued on the 8th day of April, 1896, to Lyle J. Millan, who died on the 28th of September, 1899.   Being a nonresident, the defendant removed the case here.   The writ was directed to the sergeant of the city of Richmond.   The return is as follows:

"Executed in the city of Richmond on the 26th day of April, 1900, by delivering a true copy of the within process to Morton Marye, auditor of public accounts of Virginia, and immediately transmitting by mail a copy to the home office of the Mutual Reserve Fund Life Association, no citizen of this state having been appointed by said association its agent upon whom lawful process may be served."

The service of process was had in this case under the provisions of sections 1265–1267, c. 53, Code Va., 1887:

"Sec. 1265. When Foreign Companies not to Insure.—No insurance company which is not incorporated under the laws of this state, shall make any contracts of insurance within this state, until such insurance company shall have complied with the provisions of this chapter.

"Sec. 1266. Appointment of Agent on whom Process may be Served.—Every such company shall, by a written power of attorney, appoint a citizen of this state, residing in the city of Richmond, its agent upon whom may be served all lawful process against such company, and who shall be authorized to enter an appearance in its behalf.   A copy of such power of attorney, duly certified and authenticated, shall be filed with the auditor of public accounts, and copies thereof duly certified by the auditor shall be received as evidence in all courts of this state.

"Sec. 1267. If Agent Die, etc., Another to be Appointed; When Service of Process may be on Auditor.—If any such agent shall be removed, resign, die, become insane, or otherwise incapable of acting, it shall be the duty of the company to appoint another agent in his place, as prescribed in the preceding section, and until such appointment is made, or during the absence of any agent of such company from the state, service of process may be upon the auditor of public accounts with like effect as upon an agent appointed by the company.   The officer serving such process upon the auditor shall immediately

transmit a copy thereof, by mail, to the company, and state such fact in his return."

It is contended on behalf of the plaintiff that, in the absence of an agent designated by the provisions of section 1266, on whom process could be served, the auditor of public accounts was the proper and only person on whom the summons could be executed. The defendant is a life insurance company conducted on the mutual assessment plan. It insists that it is not subject to the provisions of chapter 53 of the Code and the acts amendatory thereof; that the provisions of that chapter apply to old line and not to assessment companies. It claims that an assessment company is controlled by the act of the general assembly of Virginia approved May 18, 1887, as amended by an act approved February 24, 1890. Section 1 of that act provides:

"That it shall not be lawful for any corporation or association, organized under the authority of the laws of this or any other state, for the purpose of furnishing life or accident indemnity or insurance upon the assessment plan, by its agents, to do any business in this state, or for any person to act within this state as agent in soliciting, procuring, receiving, or transmitting any application for membership or insurance, in or for or on behalf of any such corporation or association, unless such corporation or association shall be authorized to do business in this state, and such agent licensed by the auditor of public accounts, as hereinafter provided."

With reference to the service of process under this act section 3 provides:

"No such corporation or association mentioned in the preceding section shall transact any business in this state, by an agent, unless it shall first file with the auditor a written instrument or power of attorney, duly signed, sealed and acknowledged, authorizing some person who is resident of this state, to be named in such instrument or power of attorney, to act as its attorney and to acknowledge service of process, or upon whom process may be served for and on behalf thereof, which service shall be taken and held to be as valid as if served upon such corporation or association according to the laws of this or any other state: provided that if such attorney shall die, be removed, or resign, or cease to be a resident of this state, it shall be the duty of such corporation or association in like manner to appoint and designate another person, a resident of this state, to act as such attorney, within thirty days after being notified by the auditor of the vacancy in said office."

The act of 1887 was the first distinct legislation in Virginia relative to assessment companies. Why they were not embraced within provisions of chapter 53 of the Code it is not necessary to inquire. The provisions of that chapter are inapplicable to companies conducted on the assessment plan, if for no other reason than that they have no capital with which they can secure their policy holders. This was one of the principal objects the legislature had in view in enacting the provisions of chapter 53. This is seen in section 1270, requiring foreign companies to give bonds with security to the auditor of public accounts, conditioned to make returns, and pay the taxes required by law. Section 1271 requires the company to deliver, under oath, to the treasurer of the state, a statement showing the amount of its capital stock, and to deposit with the treasurer certain designated bonds to an amount equal to 5 per cent. of its capital stock. Section 1272 provides for the companies drawing the interest on the bonds so deposited. Section 1273 provides for a sale of the securities to pay liabilities. Section

1274 gives to policy holders a lien on the securities deposited with the treasurer for any amount due them under their policies, and provides the remedy for enforcing such lien. None of these provisions are found in the act of 1887. Again, chapter 53 of the Code applies to insurance companies not incorporated under the laws of the state of Virginia (section 1265); while the act of 1887 applies alike to corporations or associations organized under the authority of the laws of Virginia, or any other state, for the purpose of furnishing life or accident insurance upon the assessment plan (section 1). A comparison of section 1267 of the Code with section 3 of the Act of 1887 shows a wide difference in the means provided for securing service of process. Section 1267 provides that the agent of the foreign company shall appoint a citizen of the state of Virginia residing in the city of Richmond, and, if such agent become incapable of acting, it is made the duty of the company to appoint another agent in his place; and until such agent is appointed, or during the absence of the agent from the state, service of process may be upon the auditor of public accounts. Section 3 of the act of 1887 provides that the assessment company shall appoint a citizen of this state, and, if the agency becomes vacant by any of the means named, it is made the duty of the company to designate another person, a resident of the state of Virginia, to act as such agent, within 30 days after being notified by the auditor of such vacancy. No provision is made by the act for the service of process during the existence of the vacancy, the legislature perhaps regarding the penalty of fine and imprisonment by section 6 of the act of 1887 upon any person transacting business for an assessment company without a license, and the requirement of section 4 that the license to agents must be renewed annually, as sufficiently coercive to secure the prompt appointment of an agent upon whom process could be served. Many other differences in the provisions of chapter 53 of the Code and those of the act of 1887 might be pointed out, but those referred to are sufficient to show the legislative intent in the enactment of chapter 53 of the Code, and in the passage of the act of 1887. It intended the former to apply alone to foreign life insurance companies doing business on the old line plan, and the latter to foreign and domestic companies engaged in furnishing life and accident insurance upon the assessment plan. The legislature intended the act of 1887, as it does, to cover the whole subject of insurance on the assessment plan; and it is, as amended, the law governing companies furnishing such insurance. It has no connection with, and makes no reference to, the law embodied in chapter 53 of the Code. It contains no provision authorizing service of process on the auditor of public accounts. It follows that the service of process in this case was null and void. The copy of the process which the return shows was transmitted to the defendant company is not a true copy of the original. The day, month, and year of its issuance are left blank. It is conceded by counsel for the plaintiff that these defects are fatal to a legal service, and in the view of the court as to the original writ it is not necessary to discuss the deficiency of the copy.

There is one other ground urged by the defendant in support of its motion to quash the process. It is thus stated in the written motion to quash:.

"Because before and at the time of the issuance of the said writ of process herein, to wit, on the 16th day of April, 1900, and before and at the time of the alleged service of the same upon. Morton Marye, auditor of public accounts of the state of Virginia, to wit, on the 26th day of April, 1900, the said Mutual Reserve Fund Life Association was, and thence hitherto has been, and still is, a foreign insurance company, on the assessment plan, chartered and incorporated by and under the laws of the state of New York. and a citizen and resident of the city of New York, in the state of New York, and not a resident or citizen of the state of Virginia, and not then or since carrying on any business or having any property, office, officer, or agent in the said state of Virginia; and that it cannot legally be made a defendant in this action .by service of the writ or process aforesaid on said Morton Marye, auditor, as aforesaid, as the plaintiff has assumed to do, as appears by the record herein."

In support of its motion to quash on the ground that it had ceased to do business in the state of Virginia at the time the writ was issued and served, the defendant files the following affidavit of its vice president:

"State of New York, County of New York. George D. Eldridge, being duly sworn, deposes and says: That he is of full age, and is, and for two years past has been, vice president and actuary of the Mutual Reserve Fund Life Association. That for several years prior to the 12th day of March, 1900, the said Mutual Reserve Fund Life Association was licensed to and was doing business in the state of Virginia as a life insurance company on the assessment plan under the statutes of said state in such case made and provided. That on the 12th day of March, 1900, by resolution of the board of·directors of the said association duly adopted, said association withdrew from the state of Virginia, and ceased to do business in said state, and revoked the authority of each and every one of its agents or collectors in said state, and since said date has had no agent or collector in the state of Virginia, and has not been doing or transacting any business of any name or nature in said state, and has not been collecting any assessments, dues, or other premiums therein, or transacting any business of any kind.                George D. Eldridge.

"Subscribed and sworn to before me this 11 day of June, 1900.
                "Sewell T. Tyng, Notary Public, N. Y. Co.   No. 45."

It also files from the office of the auditor of public accounts copies of the following proceedings of the board of directors of the defendant company, and of the action of the company taken in pursuance thereof, and the auditor's certificate:

"Whereas, the Mutual Reserve Fund Life Association did, on the 11th day of May, 1895, duly appoint Major Chas. S. Stringfellow its agent and attorney to accept service of legal process for it in the state of Virginia, pursuant to the provisions of the statute in such cases made and provided; and whereas, said association has, by a resolution of its board of directors, this day withdrawn from the said state of Virginia, and does not intend henceforth to transact any business therein: Therefore, be it resolved, by the board of directors of the Mutual Reserve Fund Life Association, that the said appointment of said Maj. Chas. S. Stringfellow as its attorney and agent for the service of process in the state of Virginia be, and the same hereby is, revoked and annulled."

"I hereby certify that the foregoing is a true copy of a resolution adopted by the board of directors of the Mutual Reserve Fund Life Association at a meeting thereof regularly called and held on the 12th day of March, 1900.
      "[Signed]                          Charles W. Camp,
                        "Sec'y Mutual Reserve Fund Life Asso."

(Corporate seal annexed.)

"Whereas, the Mutual Reserve Fund Life Association has for a number of years last past been duly licensed to transact the business of life insurance on the assessment or co-operative plan in the state of Virginia; and whereas, the said association is desirous of withdrawing from the said state, and of transacting no further business therein: Therefore, be it resolved, by the board of directors of the Mutual Reserve Fund Life Association, that said association does hereby withdraw from the state of Virginia, and hereafter and from this date that no business be written in the said state. And be it further resolved, that the appointments and contracts of agents, general agents, managers, and collectors be, and they are, terminated, canceled, and annulled as of this date. Be it further resolved, that a certified copy of this resolution be transmitted to the auditor of public accounts for the state of Virginia."

"I hereby certify that the foregoing is a true copy of resolutions adopted by the board of directors of the Mutual Reserve Fund Life Association at a meeting thereof regularly called and held on the 12th day of March, 1900.
"[Signed]                                                   Charles W. Camp,
                              "Sec'y Mutual Reserve Fund Life Asso."
(Corporate seal of the association attached.)
                    "Commonwealth of Virginia.
              "Office of the Auditor of Public Accounts, June 2nd, 1900.
"I, Morton Marye, auditor of public accounts of the state of Virginia, do hereby certify that the Mutual Reserve Fund Life Association, a foreign association chartered under the laws of the state of New York, was, on the 19th day of December, 1894, duly licensed to do business in Virginia as a foreign insurance company on the assessment plan, under section 3 of the act of the extra assembly of the legislature of Virginia of 1887, approved May 18th, 1887, chap. 271, page 384; and was in like manner, and only in such manner, licensed each succeeding year down to and including the present year; the last license as aforesaid having been granted to said Mutual Reserve Fund Life Association on the 2nd day of January, 1900. I further certify that on the 14th day of March, 1900, I received by mail the resolutions and revocation of the power of Maj. Chas. S. Stringfellow as the statutory agent of the said Mutual Reserve Fund Life Association, copies of which are hereto attached (certificates of acknowledgment and proof being omitted), marked 'A.' 'B,' and 'C'; and that the same were duly signed and proved, under the corporate seal of the said association, and acknowledged and certified according to law.

"Given under my hand this 2nd day of June, in the year one thousand nine hundred.                          Morton Marye, Auditor Public Accounts."

It thus clearly appears that more than one month before the issuance and service of the writ the defendant association had withdrawn from the state of Virginia, had revoked the authority of its agent Charles S. Stringfellow, who had been appointed to accept legal process, and of all others its agents, and had ceased to do business in the state. This presents the question, can an action be maintained on the policy sued on against the defendant, a foreign corporation, in a Virginia court?

That jurisdiction to render a personal judgment against a nonresident can only be acquired by personal service of the writ or summons on the party or by his voluntary appearance is too well established to admit of question. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517; St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222. In the last case the court said, referring to Pennoyer v. Neff:

"The doctrine of that case applies in all its force to personal judgments of state courts against foreign corporations. The courts rendering them must have acquired jurisdiction over the party by personal service or voluntary appearance, whether the party be a corporation or a natural person. There is

103 F.—49

only this difference: a corporation, being an artificial person, can act only through agents, and only through them can be reached, and process must, therefore, be served upon them."

People v. Commercial Alliance Life Ins. Co., 7 App. Div. 297, 40 N. Y. Supp. 269, was a case arising under a statute of the state of Maine providing for the service of process in an action against a foreign insurance company. The statute provided that, where an action was brought against a foreign insurance company, service of the summons might be made on any authorized agent of the company, and that, if no such agent could be found, then service might be on the insurance commissioner. The corporation ceased to do business in the state of Maine on July 1, 1894. On July 3, 1894, a summons was served on the insurance commissioner, and on July 23, 1894, on a person claimed to be an agent of the foreign corporation. It was held that the statute affected only foreign insurance companies doing business within the state of Maine, and that, as the corporation ceased to do business in that state on July 1, 1894, the service was ineffective, and would not sustain a judgment entered thereon. Patterson, J., said:

"When a foreign corporation undertakes to transact business in a state other than that in which it is incorporated, it undoubtedly submits to the authority of the courts of that other state, and will be bound by the statutory provisions respecting the method of such courts obtaining jurisdiction over it. * * * While this Commercial Alliance Company was transacting business in the state of Maine it was subject to the provisions of the statute of Maine respecting the service of process in an action against it on the state commissioner of insurance, in the absence of any authorized agent of the company upon whom service might be made. But that subjection does not last forever. As the Commercial Alliance Insurance Company had ceased to do business on the 1st day of July, 1894, had withdrawn from the state, and had no authorized agent upon whom service might be made after that date, the substituted service on the state commissioner would not bind it as the equivalent of personal service."

A statute of the state of Kentucky provided that before authority should be granted to any foreign insurance company to do business in that state it should consent that service of process upon any agent of the company in that state or upon the commissioner of insurance in any action brought in that state should be a valid service. On the 10th of May, 1894, the Mutual Reserve Fund Life Association Insurance Company of New York adopted a resolution in compliance with the requirements of the statute, and did business in Kentucky until October 10, 1899. At the latter date the insurance commissioner revoked the authority granted the insurance company, and all licenses issued to its agents. Subsequently an action was brought against the company, and process was served on the commissioner of insurance. The court held that the consent of the company to the service of process upon its agents or upon the commissioner of insurance ceased to be effective upon the revocation of the company's license to do business in that state, and that service of a summons thereafter on the insurance commissioner in a suit brought against the insurance company in a state court conferred no jurisdiction upon that court over the defendant company. Swann v. Association (C. C.) 100 Fed. 922.

Another case arising under the same statute as that referred to in the case just cited is Friedman v. Insurance Co. (C. C.) 101 Fed. 535. In rendering this decision, Barr, J., said:

"While it is true that the act authorizes the service of process upon any agent of the foreign insurance company, whatever may be the character of the agency, and also authorizes service upon the insurance commissioner, still the agents of the company and the insurance commissioner are so connected, we think, as to make the authority of the insurance commissioner cease when there is no agent whatever of the insurance company, and no business done in the state, so as to give, under the law, either residence or legal presence of the insurance company."

The authorities cited fully sustain the position of the defendant in the second ground assigned for quashing the service. When the defendant ceased to do business in Virginia, and revoked the authority of its local agents, it was no longer amenable to the jurisdiction of the state courts. The right to serve process on any of its former agents or on the auditor of public accounts—even had the right to serve process on this official ever existed—was terminated by the withdrawal of the company from the state. The motion to quash will be sustained, and the case dismissed, without prejudice.