## FANNIE D. BRAUNSTEIN v. FRATERNAL UNION OF AMERICA.[1]

May 5, 1916.

Nos. 19,723—(19).

**Foreign insurance company — service of process on insurance commissioner.**

1. Where a foreign insurance corporation has been duly authorized to do business in this state, and has filed with the insurance commissioner the instrument appointing him and his successors its attorney, upon whom process may be served as provided by statute so long as any liability remains outstanding in this state, the stipulation of the corporation in regard to the service of process becomes an obligation of the company, precisely as though it were incorporated in the policies issued in this state to citizens thereof, and thereafter actions growing out of policies issued in this state may be commenced by service of the summons upon the insurance commissioner, as provided by statute, whether the corporation continues to do business in this state or not.

**Same — reinsuring company bound.**

2. A foreign insurance corporation duly authorized to do business in this state went out of business and transferred its business and obligations to defendant, a foreign corporation, which has never been authorized to do business in this state. Defendant assumed the liabilities of its assignors and predecessors. *Held*, that one of the liabilities assumed

[1]Reported in 157 N. W. 721.

by defendant is the stipulation contained in the instrument theretofore filed by its assignors in the office of the insurance commissioner of this state, and that service of the summons upon the insurance commissioner in an action on an insurance contract, made by its predecessor while doing business in this state, subjects the defendant to the jurisdiction of the courts of this state.

Action in the district court for Ramsey county. Defendant appeared specially and obtained an order directing plaintiff to show cause why defendant's motion to vacate the service of the summons should not be granted. From an order denying its motion to vacate the service of summons, Michael, J., defendant appealed. Affirmed.

*William G. White,* for appellant.

*A. J. Hertz and James E. Markham,* for respondent.

SCHALLER, J.

The plaintiff is the beneficiary named in the certificate issued to Rachel Itzicovitz by the Modern National Reserve in 1904.

The question involved in this appeal is whether the service of the summons on the insurance commissioner of this state conferred jurisdiction over the defendant.

The facts are in many respects similar to those in Kulberg v. Fraternal Union of America, 131 Minn. 131, 154 N. W. 748. The facts in that case are stated as follows:

"The Modern National Reserve, at a time prior to February, 1910, was a mutual beneficiary association organized under the laws of the state of Iowa, and authorized to transact its business in this state. In compliance with our statutes it appointed the insurance commissioner as its representative upon whom the service of process against it might be made. The association issued to one Osias Kulberg a benefit certificate for the sum of $2,000 payable at his death to plaintiff in this action. The Highland Nobles was also a fraternal beneficiary association, organized under the laws of Iowa, and likewise authorized to transact its business in this state, and had designated the insurance commissioner for the service of process against it. On some date prior to February 25, 1910, the precise date does not appear, both these associations were

excluded from the state and debarred from the right to further transact their insurance business therein. On February 24, 1910, the two associations entered into an agreement by the terms of which the Highland Nobles reinsured all members in good standing in the National Reserve, assumed all the liabilities of that association, and agreed to pay to each and every certificate holder thereof all the benefits he might be entitled to thereunder. While the agreement refers to the transaction between the two associations as a consolidation, it is clear from the various provisions thereof that the Highland association took over the business of the Reserve association, and the latter transferred all its property and effects to it, ceased to operate its insurance business, and the consolidated business was thereafter managed and controlled by the Highland company, 'under its fundamental laws, rules, and regulations.' At the time of this reinsurance or consolidation neither association was entitled to engage in business in this state, and never thereafter became entitled to continue the business therein. Thereafter, on July 5, 1910, the Highland Nobles consolidated with the American Order of Protection, a fraternal beneficiary association organized and existing under the laws of the state of Nebraska, and the new association assumed the name of American Nobles. The terms and provisions of this agreement of consolidation do not appear, any further than the new concern adopted the name of American Nobles and assumed the liabilities of the old associations. In March, 1912, this new association was absorbed by the Fraternal Union of America, defendant in this action, a fraternal beneficiary association organized and existing under the laws of the state of Colorado. This agreement refers to a merging and combining of the associations into one, and the Fraternal Union Association expressly reinsures the members of the American Nobles, and the agreement provides that thereafter the Fraternal Union, and its laws and regulations, shall govern and control the rights of the members of the consolidated associations. The effect of this arrangement was the merger of the old and the new associations, and the assumption by the latter of all existing insurance contracts and liabilities. This included the beneficiary certificate upon which this action is founded. The new association was a Colorado corporation, and has never been authorized to transact its business in this state, and at no time has it appointed the

insurance commissioner to accept service of process against it in actions brought in this state."

It further appears that the contract with Rachel Itzicovitz was made in this state while she was a resident and citizen of this state, and that from the date of the contract until her death, she continued to be a resident and citizen of Minnesota.

It is conceded that both the Modern National Reserve and the Highland Nobles were duly authorized to transact business in the state of Minnesota at the time the certificate was issued to Rachel Itzicovitz and continued to be so authorized until some time prior to the year 1910.

Under the provisions of R. L. 1905, § 1705,[1] each had filed in the office of the insurance commissioner a duly executed instrument appointing the insurance commissioner and his successors its lawful attorneys in fact, and each in that instrument had irrevocably covenanted that legal process in any action against it might be served on the insurance commissioner of this state with the same force and effect as if personally served upon the association, so long as any of its liability existed in this state.

This action was brought against the new association. The summons was served on the insurance commissioner, as provided for by G. S. 1913, § 3555. Defendant appeared specially and moved the court to set aside the service of the summons as unauthorized and insufficient to confer jurisdiction over defendant. The motion was denied. Defendant appealed.

1. Plaintiff in Kulberg v. Fraternal Union of America, supra, contended that "since defendant assumed all the contract and insurance liabilities and obligations of the original and succeeding associations, and as the successor of those associations has continued the transaction of its business in this state by the collection of premiums due from the members residing in this state, it will be conclusively presumed to have complied with the statutes requiring a designation of the insurance commissioner for the service of process against it; and, in any event, that under such circumstances it is estopped from setting up its own violation of the law, in its failure to so designate and appoint the insurance commissioner."

[1][G. S. 1913, § 3591].

It was held in the Kulberg case that, when defendant continued the business of the original association by collecting premiums upon the existing certificates of members residing in this state, it was transacting business in this state and that it was estopped from questioning the service of the summons.

We are satisfied, however, that the district court, did not, in the instant case, base its order upon the fact that the defendant had collected premiums and in this manner continued the policies in force. The evidence on this question was conflicting. It consisted of affidavits which might perhaps warrant a finding that the defendant was not transacting business in this state under the rule in the Kulberg case.

There is little doubt that the instrument filed with the insurance commissioner by defendant's predecessors became an irrevocable contract that they would submit to the jurisdiction of the courts of this state in any action arising out of business transacted by them in this state in which process was served upon the insurance commissioner or his successors.

That instrument inured to the benefit of the policyholders in this state who had contracted with the association in this state while it was lawfully doing business therein, even though the association subsequently withdrew from the state. The power of attorney was by its terms irrevocable so long as any liability existed in this state growing out of any contracts entered into in this state with a citizen thereof. Woodward v. Mutual Reserve Life Ins. Co. 178 N. Y. 485, 71 N. E. 10, 102 Am. St. 519; Hunter v. Mutual Reserve Life Ins. Co. 218 U. S. 573, 31 Sup. Ct. 573, 54 L. ed. 1155, 30 L.R.A.(N.S.) 686; Provident Savings Life Assurance Society v. Commonwealth of Kentucky, 239 U. S. 103, 36 Sup. Ct. 34, 60 L. ed. 167.

The rule laid down in Woodward v. Mutual Reserve Life Ins. Co. supra, which case was cited in Mutual Reserve Life Ins. Co. v. Birch, 200 U. S. 612, 26 Sup. Ct. 752, 50 L. ed. 620, and again in Hunter v. Mutual Reserve Life Ins. Co. supra, commends itself to us as sound. The language of the New York court, quoted in the Hunter case, is "that the stipulation of the company in regard to service of process became an obligation of the company precisely as though it 'had been incorporated in the policies, and thereafter, whether the company continued to

do business in the state or not, policy holders could commence action by service of process upon the secretary of state,' subsequently changed to the insurance commissioner."

Cases bearing upon this point were reviewed by Mr. Justice McKenna in the Hunter case and by Mr. Justice Hughes in the Provident Savings Society case, where it was stated that "the authority which the company had given with respect to service of process continued in force as to actions growing out of business which had been transacted within the state."

It follows that if this action had been brought against the Highland Nobles or the Modern National Reserve the fact that they had withdrawn from and were not doing business in this state would not oust the jurisdiction of its courts.

2. But the defendant insists that it never did business in Minnesota, was never authorized to do business therein and never filed any instrument or power of attorney of any kind whatsoever. Assuming these to be the facts, it does not necessarily follow that the defendant is not subject to the jurisdiction of the courts of Minnesota.

The contracts and agreements under and by virtue of which this defendant finally took over the business of the Modern National Reserve, the Highland Nobles and the American Nobles, are the identical contracts construed by this court in the Kulberg case, supra, in which it was held that the effect of the arrangements culminating in the merging and combining of the associations "was the merger of the old and the new associations, and the assumption by the latter of all existing insurance contracts and liabilities. This included the beneficiary certificate upon which this action is founded." One of the purposes of the statute requiring foreign fraternal insurance companies doing business in this state to file the instrument or power of attorney referred to therein, is to compel such corporations to submit the controversies growing out of business done in this state to the courts thereof, so that citizens of this state shall not be compelled, for the purpose of enforcing their claims, to resort to the courts of the state in which the corporation has its home.

When the defendant took over the contracts of its predecessors, the Modern National Reserve, Highland Nobles, etc., it took over the burdens as well as the benefits thereof. One of these burdens was the stipulation

subjecting its predecessors to the jurisdiction of the courts of this state as long as any liability existed upon its Minnesota contracts. The result of any other holding would enable this defendant and its predecessors to evade a plain object of the statute. The service of the summons, having been made on the insurance commissioner in the manner provided by law, subjected the defendant to the jurisdiction of the courts of this state.

It is argued that the affidavits filed show that the insured, Rachel Itzicovitz, did not pay her premiums up to the time of her death and that her membership had lapsed. We do not feel that we are obliged to pass upon this question. If the certificate held by the insured is invalid by reason of facts occurring after it had been issued, those facts may be pleaded and shown in defense.

No answer has been filed herein, and the parties are not at issue. The district court did not pass upon questions involving the merits. Until it has done so there is nothing here to review.

In view of the conclusion at which we have arrived the other questions presented on the argument and in the briefs do not require more extended consideration.

Order affirmed.