### SIVERTSEN v. BANCAMERICA–BLAIR CORPORATION et al.

#### No. 79.

District Court, D. Minnesota, Fourth Division.

Dec. 21, 1940.

Fletcher, Dorsey, Barker, Colman & Barber, of Minneapolis, Minn., for defendant.

Leonard, Street & Deinard, of Minneapolis, Minn., for plaintiff.

Benjamin Segal, of Minneapolis, Minn., amicus curiae.

NORDBYE, District Judge.

The question before the Court is limited to its jurisdiction. In June, 1939, plaintiff attempted to obtain in personam jurisdiction by serving the Secretary of State and the Chairman of the Securities Commission, relying on Minnesota statutes as the basis for the power of the Court over the defendant. The plaintiff seeks to recover the amount paid for certain securities on the theory that the sale of unregistered securities renders the contract void. Defendant concedes, for the purpose of this motion, that it was transacting a securities business in Minnesota from May, 1929, to October, 1931, without a license as a foreign corporation or a license as a broker under the Blue Sky Law, Mason's Minn.St.1927, § 3996-1 et seq., and without registering securities which it sold. It is the plaintiff's position that defendant illegally carried on a security business in this State during the years in question, and notwithstanding its withdrawal from the State in 1931, it was estopped, when service was attempted in 1939, to deny its compliance with the pertinent Minnesota statutes relating to foreign corporations doing business herein in selling securities or acting. as unlicensed brokers, and thereby became amenable to the service of process provided in such statutes.

Section 7493, Mason's Minnesota Statutes 1927, the statute in effect during the period defendant was doing business herein, provides that every foreign corporation, before it shall be authorized to do business in the State, shall appoint an agent authorized to accept service of process, and where an agent cannot be found in the county of his residence, service may be made upon the Secretary of State. It must be conceded that this statute cannot avail plaintiff because no agent was appointed by defendant, and the only manner in which service could

be made upon the Secretary of State would be upon a showing that the designated agent could not be found in the county of his residence. Consequently, in absence of the appointment of an agent by the defendant, there was no one to be served. This the plaintiff recognizes, and concedes that there was an obvious deficiency in the statute during this period. However, he urges that Section 7494, Mason's Minnesota Statutes 1927, remedies this deficiency in Section 7493. The pertinent portion of Section 7494 reads:

"Any foreign corporation licensed to do business in this state may withdraw therefrom upon filing with the secretary of state a duly certified copy of a resolution duly passed by unanimous vote of its board of directors or corresponding board, or by majority vote of its stockholders, directing such withdrawal and irrevocably appointing the secretary of State of Minnesota and his successors in authority the agent of said withdrawing corporation for service of legal process and other notices upon it in any action or proceeding of any nature or kind arising out of or involving anything done or omitted by said foreign corporation in this state while licensed to do business here. Such appointment of said agent shall continue in force as long as any cause of action, right, or claim against said corporation survives in this state; and service upon such agent shall be deemed personal service upon the foreign corporation so appointing him."

A reading of this statute, however, obviously indicates that it is not mandatory. Under the circumstances herein, there being no formal withdrawal, one cannot spell out of this statute any duty on the part of this corporation to appoint the Secretary of State as its agent. Furthermore, no provision is to be found in this statute for any notice to the corporation. It may be urged that, if one formally withdraws from the State in compliance with this provision and irrevocably appoints the Secretary of State as agent, it is not necessary to provide for any notice of the service upon an agent specifically designated by the corporation. However, if one seeks to apply this statute on the basis of an estoppel, it is apparent that the absence of any provision whereby notice would be given to the corporation of any attempted service would conflict with the requirements of due process. See Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230.

In view of the foregoing, it is not necessary to discuss the effect of the repeal of Sections 7493 and 7494 on April 20, 1935, when the Minnesota Legislature adopted the Foreign Corporation Act, Laws of 1935, Chapter 200.

■■ But plaintiff earnestly urges that, if the Foreign Corporation laws are not applicable, defendant's failure to comply with Section 3996-11, Mason's Minnesota Statutes 1927, renders it amenable to the jurisdiction of this Court by the service upon the Chairman of the Securities Commission; that is, by reason of the defendant's non-compliance with this statute, it is now estopped to deny the appointment of the Commissioner as its agent and that this fiction of appointment survives its departure from the State as fully as if it had expressly appointed the Commissioner as its agent under the Act. The section in question reads:

"Every non-resident person shall, before having any securities registered or being licensed as a broker or agent, appoint the chairman of the commission, and his successor in office, his attorney, upon whom process may be served in any action or proceeding against such person or in which such person may be a party, in relation to or involving any transaction covered by this act, which appointment shall be irrevocable. Service upon such attorney shall be as valid and binding as if due and personal service had been made upon such person. Such service shall be by duplicate copies, one of which shall be filed in the office of the commission and the other immediately forwarded by registered mail to the person so served at the address on file with the commission. Provided, that any such appointment shall become effective upon the registration of the securities or the issuance of the license in connection with which such appointment was filed."

Plaintiff reasons that the Minnesota decisions relating to foreign insurance companies unlawfully doing business in this State are analogous to the present situation and are controlling in the construction of the instant statute. He cites in support of his position, among other Minnesota cases, Kulberg v. Fraternal Union of America, 131 Minn. 131, 154 N.W. 748;

Braunstein v. Fraternal Union of America, 133 Minn. 8, 157 N.W. 721; Massey S. S. Co. v. Norske Lloyd Ins. Co., 153 Minn. 136, 189 N.W. 714. Clearly, it was the duty of the defendant to become licensed as a broker and to register the securities to be sold by it in this State before it launched upon such business. The purpose of the statute was to secure local jurisdiction whenever a non-resident became licensed as a broker or sold registered securities herein. No broker, resident or non-resident, could sell securities within the State without being licensed. Section 3996-11 is a part of a comprehensive chapter dealing with the sale of securities in this State. A consideration of the other sections will more clearly indicate the purpose of the Legislature. It appears that the Legislature sought to prohibit the sale of securities by either residents or non-residents unless registered; that no sale should be made except by a licensed broker or agent; and that, as a condition precedent to such registration or licensing, the non-resident seller was required to appoint irrevocably the Commissioner as his attorney upon whom process may be served.

 It must be recognized that the State of Minnesota had the power and did prohibit non-resident corporations, as well as non-resident natural persons, from selling securities within its borders except in compliance with the regulations set forth in the statutes. Certainly, by doing business within the State, the defendant impliedly represented that it had complied with the laws. It received its money on the contracts of sale which it consummated; it enjoyed the benefits of the business it contracted in this State; and should not now be heard to say that, under these circumstances, it did not, during its corporate presence, submit to the jurisdiction of the courts of this State. If the fiction of consent arises when an insurance company illegally does business in the State, no good reason is suggested why the same principles are not applicable herein. True, there is an anomalous circumstance which arises in giving vitality to the fiction of consent in the instant situation. Plaintiff, for the purpose of obtaining jurisdiction, asserts that defendant is estopped to deny that it complied with the law, but for the purpose of recovery, he seeks to prove affirmatively that, by reason of defendant's non-compliance, the contracts entered into with him are void. On one hand, the defendant is held to have complied with the law so that the Commissioner is its agent for jurisdictional purposes in order to prove that, in truth and in fact, it did not comply with the law. But I am not convinced that this evident inconsistency is fatal to plaintiff's position in attempting to invoke the jurisdiction of the courts of this State. The fiction of consent is a creation of the courts. It is based on the principle that, by selling securities, defendant asserted its compliance with the law. It impliedly, at least, represented that, as a non-resident it was authorized to sell securities under the Blue Sky laws, and that it was submitting to the jurisdiction of the local courts in relation to or involving any transaction covered by the Act. The submission to the jurisdiction of the courts of this State is valid as to any type of action within the purview of the statute, and the mere fact that its business is void will probably not militate against the rights of those with whom defendant may have contracted its illegal business.

But can this fiction of consent be applied where defendant was no longer doing business within the State at the time of the attempted service of process? Defendant has been, according to the admitted facts, absent from the State since 1931, and has had since said time no outstanding business within the State from which it is receiving any present benefits. Consequently, it is apparent that this situation differs from a suit against an insurance company where such company has outstanding policies from which it is collecting premiums at the time the suit is instituted.

 At the outset, the statute in question must be differentiated from the statutes which expressly and by specific terms render non-resident persons amenable to certain process statutes upon doing certain acts within the State. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091. Under such circumstances, the fiction of consent is not a creation of the courts, but the consent is actual and real. For instance, where a non-resident uses the highways of this State, and where by statute such use constitutes the appointment of the Highway Commissioner as agent for service of process, no fiction is resorted to. Merely by use of the highway, the appointment of the statutory agent follows: that is, the use of the highway under such

circumstances by a non-resident is an irrevocable appointment of the statutory agent based on actual consent or its equivalent. Schilling v. Odlebak, 177 Minn. 90, 224 N.W. 694; Jones v. Paxton, D.C., 27 F.2d 364. No constitutional limitation of state power arises. But where the justification for assuming jurisdiction arises because of mere corporate activities in the State, under such a statute now under consideration, which by its terms does not give rise to any implied appointment by the doing of business, the exercise of jurisdictional powers, according to the tenor of the Minnesota decisions, must be limited to the period when such corporate activity continues. A consideration of the Minnesota cases finds no expression which indicates that amenability to process by corporate activities is synonymous with formal or even implied consent. The whole fiction of consent, if effect is to be given to the local decisions, must be limited by the condition that the exercise of jurisdiction on such grounds must be concurrent with corporate activity within the borders of the State. In other words, the corporation must be present in the State when the power of jurisdiction is exercised. Physical power over the corporation, absent actual consent, ceases when the corporation is no longer present. Kulberg v. Fraternal Union of America, supra; Louis F. Dow Co. v. First Nat. Bank, 153 Minn. 19, 189 N.W. 653; Massey S. S. Co. v. Norske Lloyd Ins. Co., supra; American Loan & Investment Co. v. Boraas, 156 Minn. 431, 195 N.W. 271; Paterson v. Shattuck Arizona Copper Co., 169 Minn. 49, 210 N.W. 620; Ruff v. Manhattan Oil Co., 172 Minn. 585, 216 N.W. 331; Garber v. Bancamerica-Blair Corporation, 205 Minn. 275, 285 N.W. 723.

One of the early cases is Kulberg v. Fraternal Union of America, supra, which construed the foreign insurance statutes, and announced the principle that a foreign insurance company transacting business in this State contrary to law, is estopped from "setting up its own violation of the law, in its failure to so designate and appoint the insurance commissioner." Page 134 of 131 Minn., page 749 of 154 N.W. The defendant company had absorbed another insurance company and continued to transact the insurance business of its predecessor. It had never complied with the applicable statutes regulating foreign insurance companies, but was enjoying the benefits of the business existing in the State which had been turned over to it by its predecessor and from which it was collecting premiums at the time the summons was served upon the insurance commissioner. In sustaining the service, the court stated at page 134 of 131 Minn., at page 749 of 154 N.W.:

"If the contention of plaintiff that the defendant, since the date of the consolidation agreement, has continued the transaction of the insurance business of the original association, by the collection of premiums upon existing certificates of members residing in this state, where the contracts were made, thus keeping the contracts in force, is sustained by the record, his position that defendant is estopped from questioning the service of the summons is sound. The precise question has been decided by the Federal courts, and by their decisions we are controlled, for the question involved is a federal question. Plaintiff's position in the matter is sustained by the following cases: Ehrman v. [Teutonia] Ins. Co., D.C., 1 F. 471; Diamond Plate Glass Co. v. Minneapolis Mut. Fire Ins. Co., C.C., 55 F. 27; Sparks v. National Masonic Acc. Ass'n, C.C., 73 F. 277; Stewart v. Harmon, C.C., 98 F. 190. And they are all cited with approval in Old Wayne Mut. Life Ass'n, v. McDonough, 204 U.S. 8, 22, 27 S.Ct. 236, 51 L.Ed. 345. Upon so assuming the liabilities of the older association, which necessitated the transaction of the business connected therewith in this state, defendant was under duty to comply with our statutes, and, having failed to do so, is estopped from denying the jurisdiction of our courts, if it continued the transaction of its business in this state."

That the court assumed that, in order to exercise jurisdiction where it relied upon the doctrine of estoppel or the fiction of consent, it must find that the defendant was present in the State at the time of the service of the summons, is clear from the following excerpt which follows that quoted above:

"So we have only to determine whether defendant, within the meaning of the law, was so transacting its business in this state at the time of the service of the summons herein."

The collection of premiums on contracts of insurance outstanding was held to be doing business at the time the action was instituted and the service was sustained.

In Massey S. S. Co. v. Norske Lloyd Ins. Co., supra, there is no specific language which indicates that the court found that the insurance company was doing business in the State at the time the summons was served. However, the showing that was made before the court indicates that the summons was served in the month of April, 1921, and that the defendant company had issued policies of insurance in the years 1919, 1920 and 1921, from which facts it may be fairly concluded that the court recognized the necessity of corporate presence when the summons was served.

In Louis F. Dow Company v. First Nat. Bank, supra, the court considered the effect of the service of a summons on a president of a foreign corporation, the president being a resident of the state, but the corporation at the time of the service was doing no business within the state, although during a prior period when the transaction involved in the litigation arose, it was doing business within this State. The court held that, in that the defendant was not doing business at the time of the attempted service, no jurisdiction was obtained, and in commenting upon its holding that no jurisdiction existed, the court stated at page 22 of 153 Minn., at page 654 of 189 N.W.:

"The instant case is to be differentiated from the one where a foreign corporation has gone into a state and with its citizens entered into contracts of extended duration and containing mutual obligations, such as insurance policies, from which the corporation continues to receive benefits from time to time. In such a case when sued on its contract so made in the state it cannot escape from a finding that it is doing business, although it has formally withdrawn from the state and seeks no new business therein. [Citing cases.]

"In the cases involving jurisdiction of a foreign corporation in this court it will be found that when the service of summons was sustained the facts disclose that the corporation was then doing business in the state, or else was held to be present under the principle stated in the preceding paragraph."

In American Loan & Inv. Co. v. Boraas et al., supra, the court considered the effect of the withdrawal from the State of the plaintiff foreign corporation after it had commenced an action in this State on a judgment obtained against defendant in North Dakota. The defendant in the plea of abatement asserted that, by reason of the withdrawal, the company could no longer maintain its action here. It appears that the plaintiff had complied with the Foreign Corporation Law and was licensed to do business herein. The contract which was the basis for the North Dakota judgment was entered into in this State during the period when plaintiff was licensed to do business herein. Therefore, the collection of the judgment was one of the unadjusted items of business entered into under its license as a foreign corporation, and the court held as to such matters that the foreign corporation remained in the State subject to the jurisdiction of the court by service of process, and the attempt of plaintiff to withdraw was "ineffectual for any purpose." In commenting upon the failure of the plaintiff to show that it had transacted any business at the time of the commencement of the action, the court stated at page 435 of 156 Minn., at page 272 of 195 N.W.:

" * * * Nor need it in such cases be shown that at the commencement of the suit the company was in fact still doing business in the state. Moulin v. Trenton Mut. [Life & Fire] Ins. Co., 25 N.J.L. 57; 21 Ruling Case Law, 1344, and citations. A different rule is applied where the foreign corporation enters the state for the transaction of business without a compliance with its laws, subsequently withdrawing altogether. In a case of that kind, the presence of the corporation being unlawful, we have held that a showing must be made that the company was doing business in the state at the time of the commencement of the suit. [Louis F.] Dow Co. v. First Nat. Bank, [153 Minn. 19] 189 N.W. 653."

The most recent expression of the Minnesota Supreme Court is found in Garber v. Bancamerica-Blair Corporation et al., 205 Minn. 275, 285 N.W. 723. That case involved this same defendant and the same facts with respect to the period when the defendant was carrying on a sale of securities in this State. Service was attempted, however, by the service of a summons on a subsidiary corporation as alleged agent of the defendant. While the court did not consider the effect of a service on the Securities Commissioner and did not consider the question of his agency to accept service of process on the theory of estoppel because no attempt had been

made to serve the Commissioner, it did announce certain principles which are controlling where jurisdiction, absent consent, is attempted. The following language may be referred to at page 278 of 205 Minn., at page 725 of 285 N.W.:

"1. The question is whether a foreign corporation which did business in the state without having designated an agent for service or consented to jurisdiction is subject to jurisdiction after it has ceased doing business in and has withdrawn from, the state. A state, absent consent, may exercise jurisdiction over a foreign corporation only if it is doing business in the state at the time of the service of process. Dahl v. Collette, 202 Minn. 544, 279 N.W. 561; Restatement, Conflict of Laws, § 92. Jurisdiction is predicated on doing business in the state at the time of service of process to conform with inherent and constitutional limitations."

And at page 280 of 205 Minn., at page 726 of 285 N.W.:

"Jurisdiction begins, continues and ceases with doing business in the state, the fact on which it is based. De Castro v. Compagnie Francaise Du Telegraphe, C.C., 76 F. 425. A foreign corporation, after it has once entered a state, is not bound to remain there, but may withdraw at will. Reliance Motor Co. v. Craig, 206 Iowa 804, 221 N.W. 499. Jurisdiction ceases when a foreign corporation ceases to do business and withdraws from the state. American Loan & Inv. Co. v. Boraas, supra; Conley v. Mathieson Alkali Works, 190 U.S. 406, 23 S.Ct. 728, 47 L.Ed. 1113; Roark v. American Distilling Co., 8 Cir., 97 F.2d 297; St. John v. Oklahoma Natural Gas Corp., 5 Cir., 69 F.2d 96; R. L. Witters Associates, Inc., v. Ebsary Gypsum Co., D.C., 19 F. Supp. 646; Jefferson Island Salt Co. v. E. J. Longyear Co., 210 Ala. 352, 98 So. 119; Gaboury v. Central Vermont Ry. Co., supra [250 N.Y. 233, 165 N.E. 275]; Swann v. Mutual Res. Fund L. Ass'n, C.C., 100 F. 922; Eureka Merc. Co. v. California Ins. Co., 130 Cal. 153, 62 P. 393.

"Jurisdiction existed during the period from 1929 to 1931 upon the hypothesis that appellant was then doing business here. Such jurisdiction ceased when it withdrew from the state in 1931. There was no jurisdiction thereafter, unless appellant again did business in the state. * * *

"Jurisdiction must exist as of the time the summons is served. That there may have been jurisdiction at some prior time, as there was here, will not suffice. * * *"

It is plaintiff's position, however, that in the Garber case the court was speaking of an agent appointed by a foreign corporation under the laws of the State, or under circumstances where service was attempted to be made upon an officer of the corporation who happened to be in the State at the time service was attempted. Plaintiff recognizes that service on such agents must be concurrent with the doing of business within the State. But it contends that the fiction of consent or estoppel is as extensive and complete as if the defendant in the instant case had actually filed in writing an irrevocable appointment of the State Securities Commissioner as its process agent. However, the Minnesota Supreme Court has not so held; on the contrary, such a view would be inconsistent with the express limitations on jurisdiction as enunciated by that court. Whether service on a corporate agent or official is attempted, or service by reason of the fact that the corporation "has become amenable to the jurisdiction of the state," by the fact that it is doing business therein, the basis of the service is the activities of the corporation within the State. If the power over the corporation ceases upon departure when service is attempted upon an actual agent, no cogent reason is suggested why jurisdiction can continue by the creation of some fiction of consent. When the court in the Garber case stated that, absent consent, jurisdiction may be only exercised over a foreign corporation if it is doing business in the State at the time of the service of process, it is quite evident that the court did not use the word "consent" to mean anything but actual consent; not a mere fiction of consent. There is no pertinent provision in the securities statute from which implied consent can be spelled in the event the defendant fails to obtain a license or fails to register its securities. Certainly, implied consent must be founded on statutory language; it must rest upon something. As indicative of the court's use of the word "consent" in the Garber case, reference may be made to its comments therein on the numerous theories that have been advanced to justify jurisdiction where a corporation is doing business within the State. The court said at

page 279 of 205 Minn., at page 726 of 285 N.W.:

"The so-called consent and submission to jurisdiction, at least so far as they are subjective, and corporate presence, are of course mere fictions and generally are directly opposite to the real facts of the case. Pennsylvania F. Ins. Co. v. Gold Issue M. & M. Co., 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610; Flexner v. Farson, 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250; 14 Cal.L.Rev. 12. Perhaps it would be more accurate to say that the foreign corporation has become amenable to the jurisdiction of the state."

If there is any doubt as to the application of the principles of the Garber case, where service is sought to be obtained by reason of corporate activities within the State and the attempt is made to continue the power of the State after the activities have ceased, reference may be made to one or more of the cases cited by the court in support of its views. When the court stated at page 280 of 205 Minn., at page 727 of 285 N.W.: "Jurisdiction ceases when a foreign corporation ceases to do business and withdraws from the state," it cited, among other cases, American Loan & Inv. Co. v. Boraas, heretofore referred to, and Roark v. American Distilling Co., 8 Cir., 97 F.2d 297, where service was attempted on the State Auditor of Arkansas. The Arkansas statute provided that, in absence of a designation of an agent upon whom service might be made, service might be had on the State Auditor. The distilling company had not been licensed to do business in the state and no appointment of an agent had been made as the statute required. The plaintiff attempted to obtain jurisdiction by making service on the State Auditor, basing his claim of jurisdiction on the same fiction of consent that is the foundation of plaintiff's jurisdiction herein. However, the court in the Roark case considered the nature of the business at the time of the service as controlling, and it appearing that the distilling company was not doing business in the state at the time of the service, the motion to quash was sustained. The court stated at page 298 of 97 F.2d:

"The law is that the foreign corporation must be carrying on business at the time of the attempted service. Consolidated Textile Corporation v. Gregory, 289 U.S. 85, 86, 53 S.Ct. 529, 77 L.Ed. 1047; International Harvester Co. v. Kentucky, 234 U.S. 579, 585, 34 S.Ct. 944, 58 L.Ed. 1479. Here there were but two isolated transactions which had taken place some months before the attempted service of summons and it is undisputed that all other transactions and the course of business at the time of attempted service was purely interstate."

Furthermore, the textwriter in 20 Corpus Juris Secundum, Corporations, § 1920, p. 172, cited the Garber and Boraas cases in support of the following principle: "It will be noted that these rules of the irrevocability of the agency are based on the consent, express or implied, of the foreign corporation to receive service after its withdrawal from the state. Where no such consent can be found, as where a corporation was doing business in the state without complying with its laws requiring the appointment of an agent for service of process, the corporation must ordinarily be doing business in the state at the time of service of process if suit against it is to be maintained."

Indeed, a careful reading of the Dow case must lead to the conclusion that the court therein refused to find that the fiction of consent to jurisdiction continues after the corporation has ceased to do business in the State. The transaction therein grew out of business done within the State. The corporation had neglected to comply with the foreign corporation regulations, and under such circumstances the statutes of Minnesota permitted service on the president of the corporation. The plaintiff therein was a resident of the State and the business involved in the lawsuit grew out of transactions entered into by the defendant when it was illegally transacting business within the State. The estoppel rule, or being amenable to the jurisdiction of the State, could have been invoked with the same reasoning as advanced in the instant situation; that is that regardless of the banking company's ceasing its activities within the State, having performed business within the State, it consented and submitted to the jurisdiction of the courts as to any business done within the State. The president admittedly was the agent of the corporation during the period of the corporate activities, and therefore continued in such capacity. In fact, Chief Justice Brown, who dissented, asserted the view which is being advanced by the plaintiff herein, and it is significant that the majority opinion did not concur, Chief Justice Brown stating at page 26 of 153 Minn., at page 656 of 189 N.W.:

"That rule is well settled and applies to foreign corporations which do not comply with our statute yet by business transactions here entered into incur obligations to be performed therein. In theory of the law in such case the foreign corporation is present within the state at the time the transaction occurs, and by the same token remains therein until all rights arising therefrom are satisfied and discharged."

That the so-called fiction of consent should not be given the same interpretation as a formal appointment of a statutory agent is recognized in Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610, when Justice Holmes differentiated the rulings in Old Wayne Mutual Life Ass'n v. McDonough, 204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345, and Simon v. Southern Railway Co., 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492, from the holding in that case. In the Old Wayne and Simon cases, it was held that the illegal doing of business by foreign corporations in the state did not justify the courts of that state in exercising jurisdiction of causes of action arising elsewhere. In Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., however, formal appointment was made of the insurance commissioner, and the holding by the Missouri Supreme Court that the local Missouri courts had jurisdiction over a Colorado insurance contract was sustained, because, as Justice Holmes stated at page 96 of 243 U.S., at page 345 of 37 S.Ct., 61 L.Ed. 610:

"But when a power actually is conferred by a document, the party executing it takes the risk of the interpretation that may be put upon it by the courts. The execution was the defendant's voluntary act."

This also was undoubtedly the view of Judge Learned Hand in Smolik v. Philadelphia & Reading Coal & Iron Co., D.C., 222 F. 148, 151, wherein he states:

" * * * When it is said that a foreign corporation will be taken to have consented to the appointment of an agent to accept service, the court does not mean that as a fact it has consented at all, because the corporation does not in fact consent; but the court, for purposes of justice, treats it as if it had. It is true that the consequences so imputed to it lie within its own control, since it need not do business within the state, but that is not equivalent to a consent; actually it might have refused to appoint, and yet its refusal would make no difference. The court, in the interests of

justice, imputes results to the voluntary act of doing business within the foreign state, quite independently of any intent.

"The limits of that consent are as independent of any actual intent as the consent itself. Being a mere creature of justice it will have such consent only as justice requires; hence it may be limited, as it has been limited in Simon v. Southern Railway, supra, and Old Wayne Insurance Co. v. McDonough, supra."

Reference may be made to Millan v. Mutual Reserve Fund Life Ass'n, C.C., 103 F. 764, and Cady v. Associated Colonies, C.C., 119 F. 420, which express views on this question in harmony with the conclusions reached herein. In the latter case, the court indicated the following view at page 425 of 119 F.:

" * * * The state has the right to exclude foreign corporations from doing business in the state, and, where they are not excluded, their right to engage in business within the state depends upon the laws of the state granting the permission. It follows that where the state provides by law that such a corporation doing business in the state must designate some person residing in the state upon whom the process must be served, and, in default of such designation, service of process may be made upon the secretary of state, such service is valid only when the corporation is actually doing business in the state. It is not valid when the corporation has withdrawn from the state, and has ceased to do business within the state. St. Clair v. Cox, 106 U.S. 350, 1 S.Ct. 354, 27 L.Ed. 222; Swann v. [Mutual Reserve Fund Life] Association, C.C., 100 F. 922; Friedman v. [Empire Life] Insurance Co., C.C., 101 F. 535."

In People v. Commercial Alliance Life Ins. Co., 7 App.Div. 297, at page 299, 40 N.Y.S. 269, 271, the court stated: " * * * When a foreign corporation undertakes to transact business in a state other than that in which it is incorporated, it undoubtedly submits itself to the authority of the courts of that other state, and will be bound by the statutory provisions respecting [the method of] such courts obtaining jurisdiction over it. Gibbs v. [Queen] Ins. Co., 63 N.Y. 114 [20 Am.Rep. 513]. While this Commercial Alliance Company was transacting business in the state of Maine it was subject to the provisions of the statute of Maine respecting the service of process in an action against it on the state commissioner

of insurance, in the absence of any authorized agent of the company upon whom service might be made. But that subjection does not last forever. As the Commercial Alliance Insurance Company had ceased to do business on the 1st day of July, 1894, had withdrawn from the state, and had no authorized agent upon whom service might be made after that date the substituted service on the state commissioner would not bind it as the equivalent of personal service."

■ Lastly, it may be stated that the present statute was not primarily directed to the control of foreign corporations doing business within the State. There is no provision therein which indicates that the Legislature sought to obtain any implied appointment of the Commissioner if unregistered securities were sold. In fact, the appointment was conditioned upon registration and did not become effective unless a license was granted. Consequently, it would seem that the entire theory of jurisdiction must rest upon the so-called fiction of consent, which according to the Minnesota decisions is another way of saying that defendant is amenable to the jurisdiction of the State. But it may be pointed out that the defendant in the Dow case was likewise amenable to the jurisdiction of the courts of the State, but that such amenability disappeared when the defendant departed from the State. If I interpret the Minnesota decisions correctly, it would appear that the courts must have power over the corporation before it becomes amenable to the jurisdiction of the State and that such power does not exist in absence of the corporate presence. Consequently, when this Court is asked to assume power over the defendant by reason of its corporate activities, such request, which was made by the institution of the suit, did not take place until after the defendant had departed. The answer to plaintiff's contention, in light of the limitations placed upon the jurisdiction of this Court by the Supreme Court of this State, must be that the fiction of consent cannot arise unless the court at the time has the power to create the fiction. That power does not exist when corporate activities cease. The most that could be said for plaintiff's position is that, during the time defendant transacted business herein, consent to the processes of this Court resulted. What has been said with reference to the effect of defendant's departure from the

State is also pertinent as to the attempt of plaintiff to obtain jurisdiction by serving the Secretary of State.

It follows, therefore, that the motion of the defendant for an order quashing and setting aside the service of the summons and complaint and dismissing the action as to the defendant Bancamerica-Blair Corporation, a New York corporation, be and the same is hereby granted. An exception is reserved to the plaintiff.